UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>RIVERBEND FOODS LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-24114 |
| RIVERBEND FOODS LLC,<br><br>Movant,<br><br>v.<br><br>PNC BANK, N.A., KRONES, INC., SILGAN WHITE CAP LLC | |

**DEBTOR'S EMERGENCY MOTION FOR ORDERS (I) APPROVING FORM AND MANNER OF NOTICE OF SALE, (II) SCHEDULING A FINAL SALE HEARING, AND (III) AUTHORIZING PUBLIC AUCTION SALE OF PERSONAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

Riverbend Foods, LLC ("Riverbend" or the "Debtor") hereby moves this Court (the "Motion"), by and through its undersigned counsel, for entry of orders: (i) approving the form and manner of notice of sale; (ii) scheduling a final sale hearing; and (iii) authorizing the sale of certain of the Debtor's personal property assets at a public auction free and clear of all liens, claims, encumbrances, and interests pursuant to 11 U.S.C. §363(b). The facts and circumstances supporting this Motion are set forth herein and in the *Declaration of Dalton T. Edgecomb in Support of Chapter 11 Petition and First Day Motions* (the "Edgecomb Declaration"),[1] filed concurrently herewith and incorporated by reference herein. In further support of this Motion, the Debtor respectfully represents as follows:

---

[1] Capitalized terms used but not defined in this Motion have the meanings used in the Edgecomb Declaration.

121605128_2

**JURISDICTION, VENUE, AND STATUTORY PREDICATES**

1. The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002 and 6004, and rules 6004-1 and 9013-3 of the Local Bankruptcy Rules for the Western District of Pennsylvania (the "W.PA.LBR").

**BACKGROUND**

3. On the date hereof (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. No creditors' committee has been appointed by the Office of the United States Trustee for the Western District of Pennsylvania (The "U.S. Trustee") in this chapter 11 case. No trustee or examiner has been appointed in this chapter 11 case.

5. Prior to ceasing operations at the end of July of this year, Riverbend was a manufacturer of private label and contract-manufactured canned and jarred soups, broths, gravies, sauces, and infant feeding products. Apart from packaging products in glass jars and cans, Riverbend specialized in the production of Tetra Recart carton packaging, which is the only

cardboard carton packaging with sterilization for food particulates, and Riverbend owned the only production line in the United States capable of long-run, high volume production of food sold in Tetra Recart packaging. Riverbend operated out of the former Heinz facility at 1080 River Avenue, Pittsburgh, Pennsylvania 15212 (the "Property").

6. Riverbend is a Delaware limited liability company wholly owned by a holding company, Riverbend Foods Holdings LLC ("Holdings"), which is itself a Delaware limited liability company. The Riverbend entities are ultimately indirectly owned by Insight Equity. Riverbend acquired the assets used in the Debtor's business in 2017 from Treehouse Foods Inc. (NYSE: THS) ("Treehouse").

7. The Debtor and PNC Bank, N.A. ("PNC") (as an agent and lender) are party to a certain Revolving Credit and Security Agreement dated May 22, 2017 (as amended by that certain First Amendment to Revolving Credit and Security Agreement and Forbearance Agreement, and that certain Second Amendment to Revolving Credit and Security Agreement and Forbearance Agreement, effective as of March 31, 2019, and as may be further amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"). The Debtor's obligations to PNC under the Loan Agreement are secured by a first position, blanket lien upon all of the Debtor's assets.

8. Contemporaneous with the filing of this Motion, the Debtor has filed an *Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to Use Cash Collateral and (II) Granting Adequate Protection to the Prepetition Secured Party*.

9. A full description of the Debtor's operations, corporate structure, capital structure, and reasons for commencing this chapter 11 case is set forth in detail in the Edgecomb Declaration, which was filed contemporaneously herewith and is incorporated herein by reference.

*The Auction*

10.  Having ceased all operations as of July 31, 2019, the Debtor engaged in a series of private asset sales with unaffiliated third parties prior to the Petition Date to liquidate its remaining inventory, raw materials, and machinery and equipment.  Many of these sales were conducted with the assistance of Regal Equipment Inc. (the "Auctioneer") an auctioneer and liquidator well known and reputable in the industry for its specialization in the buying and selling of commercial and industrial equipment, and specifically food processing equipment.  The Auctioneer advises Riverbend that, in its over thirty five (35) years' experience, the prices obtained for these assets in its opinion reflect reasonable market value for assets of the type and nature sold.

11.  Additionally, prior to the bankruptcy filing, the Debtor entered into a certain Auction Agreement dated May 29, 2019, with the Auctioneer, as amended October 17, 2019 (the "Auction Agreement"), pursuant to which the Auctioneer agreed to market and sell the Debtor's remaining machinery, equipment, fixtures, and related items located at the Property via a multi-day public auction (the "Auction").  The assets to be sold at the Auction along with the starting bids for each are more particularly described on the attached **Exhibit A** (the "Assets").

12.  Contemporaneous with this Motion, the Debtor filed the *Debtor's Motion (A) For Authority to Employ and Retain Regal Equipment Inc. as Auctioneer Pursuant to 11 U.S.C. §§ 327(a), 328(a), and 329 and (B) to Assume Regal Equipment Inc. Auction Agreement Pursuant to 11 U.S.C. §§ 365(a)* (the "Auctioneer Retention Motion"), which seeks approval of the Debtor's retention of the Auctioneer and of the Debtor's assumption of the Auction Agreement.

13.  As noted in the Auctioneer Retention Motion, the Auctioneer is to be compensated though a buyer's premium, equal to fifteen percent (15%) of the sale price of Assets sold, with an additional three percent (3%) for online sales, and thus the Auctioneer will not be paid from the

Debtor's share of the Auction proceeds. The Auctioneer shall also be entitled to reimbursement for up to $12,000 in actual and documented expenses incurred on a post-petition basis in respect of the Auction. As the buyer's premium is paid by the buyer in addition to the final sale price, the Debtor submits that the buyer's premium paid by buyers at Auction is for the benefit of the Auctioneer and will not constitute property of the bankruptcy estate.

14.     The Auction was originally intended to occur outside of a bankruptcy process, but once a bankruptcy filing became inevitable due to, among other things, a rapidly deteriorating cash position as well as pressure from third party litigants and judgment creditors, the decision was made to conduct the Auction within the context of a chapter 11 case pursuant to section 363 of the Bankruptcy Code. The Debtor believes that the protections afforded to buyers in a Bankruptcy Court-supervised "free and clear" section 363 sale will serve to enhance the value of the Assets to be sold at the Auction and will provide the highest and best value to the Debtor and its stakeholders.

15.     The Debtor proposes to conduct the Auction over a three-day period beginning November 19, 2019 at 10:00AM EST and running through November 21, 2019. The Auction would occur in person at the Property, as well as online. Parties will be permitted to inspect the Assets in person at the Property on November 18, 2019 by appointment, by contacting the Auctioneer at (330) 325-9000 or by email at auction@regalequipment.com. The specific dates for the Auction are important to maintain because, pursuant to the Auction Agreement, the Auctioneer established a website (https://www.regalequipment.com/auction-riverbend-closing) to advertise the Auction and the specific Assets to be sold, and the website has for several weeks described the Auction as occurring between November 19 and November 21. The Debtor respectfully represents that it will suffer irreparable harm if the Motion is not set for hearing before the proposed Auction

dates because the estate will lose the benefit of such advertisement and suffer from diminishing value and continuing costs to the detriment of creditors arising from delay.

16. The Debtor seeks to sell the Assets in an "as is, where is" condition, without representations or warranties of any kind whatsoever (other than ownership of the Assets and authority to sell the same), including, but not limited to, warranties of merchantability and/or fitness for a particular purpose. Debtor proposes to make, execute, and deliver to the purchasers of Assets at the Auction, if requested, any necessary bill(s) of sale and other documents required to transfer the Assets.

17. Based on the Debtor's books and records, the following parties may hold secured claims against the Debtor and/or liens against the Assets[2]: (i) PNC, 2100 Ross Avenue, Suite 1850, Dallas, Texas 75201, Attn: Ron Zeiber; (ii) Krones, Inc. ("Krones"), PO Box 321801, Franklin, Wisconsin 53132; and (iii) Silgan White Cap LLC, 1140 31st Street, Downers Grove, Illinois 60515 ("Silgan").

18. PNC's secured claim against the Assets arises under the Loan Agreement. As of October 22, 2019, PNC was owed at least $1,679,460.18. PNC's lien against the Assets is reflected in the UCC-1 financing statement filed with the Delaware Secretary of State on May 11, 2017, at filing no. 20173132138, as amended August 27, 2019, at filing no. 20195968065, and as further amended on August 29, 2019, at filing no. 20196017912. Krones and Silgan are named as Respondents herein out of an abundance of caution—the Debtor believes these claims were paid in full. Krones's lien was against certain specified equipment referenced on the UCC-1 financing statement filed with the Delaware Secretary of State on December 15, 2017, at filing no.

---

[2] The following listing of Respondents as potential lienholders is for notice purposes only and does not constitute an acquiescence or admission by the Debtor as to the existence or validity of any of the Respondents' liens or their secured status. The Debtor reserves all rights and remedies to object to any claim filed in these bankruptcy cases or otherwise challenge the secured status of any and all of the Respondents.

20177605349. Upon information and belief, Silgan was paid in full long before it recorded a purchase money security interest in certain unidentified products sold to the Debtor, which is reflected in the UCC-1 financing statement filed on September 6, 2019, at filing no. 20196219278.

19. The Auction proceeds are expected to be sufficient to repay PNC all outstanding obligations under the Credit Agreement.

## RELIEF REQUESTED

20. By this Motion, the Debtor requests authority to conduct the Auction free and clear of all liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code, Bankruptcy Rule 6004, and W.PA.LBR. 6004-1.

21. The Debtor likewise requests entry of a proposed order substantially in the form attached hereto as **Exhibit B** (the "Scheduling Order"): (i) approving the form of notice of the Auction, attached to the Scheduling Order as **Annex 1**; (ii) approving the manner of notice of the Auction to creditors; and (iii) scheduling a final hearing to approve the Auction on November 18, 2019, or at such earlier time as may please the Court.

22. The Debtor further requests authority to make certain disbursements from the Auction proceeds without further order of Court—specifically, disbursements of the buyer's premium and any applicable expense reimbursements to the Auctioneer following receipt of an accounting and subject to a notice period as further detailed below, and a disbursement to PNC in an amount sufficient to satisfy its secured claim in full.

## BASIS FOR RELIEF REQUESTED

23. Section 363 provides, in relevant part, that the Debtor "after notice and a hearing, may sell, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

24. Section 363(f) provides, in relevant part, that the Debtor may sell the Assets free and clear of any entity's interest in the Assets other than the bankruptcy estate's interest only if:

    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2) such entity consents;

    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4) such interest is in bona fide dispute; or

    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

25. The Debtor has served this Motion on the above-captioned respondents (the "Respondents"), who may hold secured claims against the estate which may be secured by the Assets.

26. The Debtor believes that the best interest of its estate and creditors will be served by authorizing the sale of the Assets free and clear of all third party liens, claims, encumbrances, and interests against the same, specifically including but not limited to those of all parties named as Respondents. Specifically, because the Debtor is completely winding up its affairs, retaining the Assets would provide no benefit to the Respondents or the bankruptcy estate and its creditors as the Assets would likely further deteriorate and diminish in value before they are monetized.

27. The Auction satisfies the good faith requirements set forth in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986), as the sale is being duly advertised as set forth below and the Auction will be in the format of a public auction with open bidding throughout.

28. The Auction will comply with W.PA.LBR. 6004-1 as follows:

   a. The Debtor will post the required notice and information of the Auction on the Court's EASI website pursuant to W.PA.LBR. 6004-1(c)(1);

   b. The Debtor will advertise the Auction in the *Pittsburgh Post-Gazette* as well as the *Pittsburgh Legal Journal* pursuant to W.PA.LBR. 6004-1(c)(2);

   c. The Auction and Assets will also continue to be listed and advertised on the Auctioneer's website at: https://www.regalequipment.com/auction-riverbend-closing

   d. The Debtor will file the required Proofs of Publication upon receipt thereof as required by W.PA.LBR. 6004-1(c)(3).

29. Bankruptcy Rule 2002(a)(2) provides that all creditors shall receive at least 21 days' notice by mail of "a proposed . . . sale . . . of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice." Here, the Debtor proposes to serve the Notice of Sale attached as Annex 1 to the Scheduling Order on all creditors within (1) business day of entry of the Scheduling Order. The Notice of Sale will provide for an objection deadline of November 12, 2019. Accordingly, assuming entry of the Scheduling Order on October 25, 2019, the Debtor would effectuate service on October 28, 2019, which is twenty-two (22) days before the Auction and which will allow for a fifteen (15) day objection period. Accordingly, the Debtor submits that it will be in compliance with the notice requirement set forth in Bankruptcy Rule 2002(a)(1).

30. The Debtor further seeks authority to make certain disbursements of the Auction proceeds without further Order of Court. First, with respect to the buyer's premium and expense reimbursement owed to the Auctioneer, Debtor proposes that all Auction proceeds (including any buyer's premium) shall be paid directly from purchasers to an account designated by and

controlled by the Debtor. Any proceeds held by the Debtor representing buyer's premium will be held in trust for the benefit of the Auctioneer, shall not be considered property of the bankruptcy estate, and therefore shall not be utilized by the Debtor for any purpose other than payment to the Auctioneer in accordance with this Motion, except by separate order of the Bankruptcy Court upon specific notice to the Auctioneer.

31. Following the conclusion of the Auction, Auctioneer will provide to the Debtor, counsel to PNC, the U.S. Trustee, and counsel to any appointed committee in this chapter 11 case (collectively, the "Notice Parties") a full and detailed accounting of the results of the Auction, including (i) each Asset sold; (ii) the amount obtained for each Asset sold; (iii) the buyer's premium owing for each Asset sold; and (iv) an accounting of all documented and unpaid expenses for which the Auctioneer seeks reimbursement (the "Accounting"). Upon receipt of the Accounting, and following a seven (7) day notice period in which no objections are received from any Notice Party, the Debtor proposes to pay the Auctioneer any undisputed buyer's premium and expense reimbursements reflected on the Accounting without further Order of Court. In the event of an objection as to any portion of the buyer's premium or expense reimbursement, the Debtor shall distribute any undisputed portion of the buyer's premium and/or expense reimbursement to the Auctioneer and hold the amount subject to such objection pending a consensual resolution or a Court determination of the objection.

32. Secondly, the Debtor seeks authority to pay to PNC the full amount necessary to satisfy its secured claim in full upon the Debtor's receipt of the Auction proceeds, without further order of Court.

## **NOTICE**

33.     Notice of this Motion has been or will be provided to the following parties or, in lieu thereof, their counsel, if known: (a) the U.S. Trustee; (b) the creditors detailed in the list of twenty (20) largest unsecured creditors filed by the Debtor in this chapter 11 case; (c) counsel to any appointed statutory committee; (d) PNC Bank, N.A.; (e) the Internal Revenue Service; (f) the above-captioned Respondents; and (g) any party that requested notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

34.     No prior request for the relief sought herein has been made by Debtor to this Court or any other court.

[SIGNATURE PAGE TO FOLLOW]

WHEREFORE, the Debtor respectfully requests that this Court enter an order, in substantially the form attached hereto as **Exhibit B**: (a) approving the Notice of Sale attached thereto as Annex 1; (b) approving the manner of notice thereof; and (c) scheduling a final hearing to approve this Motion on November 18, 2019.  The Debtor further requests entry of an order, in substantially the form attached hereto as **Exhibit C**, authorizing the Debtor to sell the Assets at public auction free and clear of all liens, claims, encumbrances, and interests, (b) authorizing the Debtor to make certain disbursements from the Auction proceeds to the Auctioneer and PNC Bank, N.A. without further order of Court, and (c) granting the Debtor such other and further relief as the Court deems just and proper.

Dated: October 22, 2019

Respectfully submitted,

**MCGUIREWOODS LLP**

  /s/ Frank J. Guadagnino
Mark E. Freedlander (PA 70593)
Frank J. Guadagnino (PA 309768)
George W. Fitting (PA 324115)
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000
Facsimile: (412) 667-6050
mfreedlander@mcguirewoods.com
fguadagnino@mcguirewoods.com
gfitting@mcguirewoods.com

*Proposed Counsel for the Debtors*